## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FRANK A. ALVEY,

        Applicant,

v.                                          CV 06-0446 RB/WPL

JAMES JANECKA, WARDEN, AND THE
NEW MEXICO ATTORNEY GENERAL,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Frank A. Alvey is serving a term of ninety years in a New Mexico prison for thirty counts of criminal sexual penetration (CSP) of a minor, two counts of conspiracy to commit CSP of a minor, two counts of child abuse, and four counts of intimidation of a witness. (Doc. 19 Ex. O.)  He has filed an application for a writ of habeas corpus. (Doc. 1.)

The matter is before me now on Alvey's motion for an evidentiary hearing (Doc. 29) and Respondents' motion to dismiss (Doc. 17).  I conclude that no evidentiary hearing is necessary because Alvey's claims can be resolved on the basis of the record before me. *See Parker v. Scott*, 394 F.3d 1302, 1324 (10th Cir. 2005).  As for the motion to dismiss, after reviewing the record and Alvey's responses to the motion, I recommend that the motion be granted for the reasons explained below.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Alvey lived with his future wife, Stella, and their combined family in one-half of a duplex in Las Vegas, New Mexico.  (Tape 9 of Trial.)  In the summer of that year, Stella's brother

and sister-in-law moved into the other half of the duplex, along with their three children—C.C. (a girl) and A.C. and M.C. (both boys). (*Id.*) C.C. was three-years-old, A.C. was four-years-old, and M.C. was six-years-old. (*Id.*) Stella's ten-year-old son, J.P.F., also lived with Alvey and Stella. (Tape 21 of Trial.) Stella often babysat the C children. (Tape 9 of Trial.) It is undisputed that J.P.F. began sexually molesting his three cousins shortly after they moved in next door. He claimed that he learned this behavior from Alvey, who had been sexually molesting him. (Tape 21 of Trial.) The prosecution accused Alvey of participating in the abuse of the C children, both by engaging in sex acts with the children himself and by staging, directing, and watching J.P.F. and the C children engage in sex acts with each other.

In 1996, the C family moved from the duplex to another house in Las Vegas and eventually to Santa Fe. In 1998, the Alvey family moved from the duplex to a house on Yucca Street. (Doc. 19 Ex. G at 16; Tape 9 of Trial.) There was evidence that sexual abuse of M.C. and A.C. continued to occur at the Yucca house, and that the abuse did not entirely end until the children were taken into state custody and placed in foster care in 1999.

Alvey was indicted for seventeen counts of CSP of M.C. and fifteen counts of CSP of A.C.; one count of conspiracy to commit CSP on M.C. and one count of conspiracy to commit CSP on A.C.; two counts of child abuse on J.P.F. for causing or encouraging him to engage in sexual activity with M.C. and A.C.; one count of intimidating a witness against M.C., and three counts of intimidation of a witness against A.C. (Record Proper (RP) at 140-48.) Alvey was indicted for molesting C.C., but those charges were severed from this case. (*Id.* at 56-57; Doc. 19 Ex. G at 31.)

J.P.F. was also charged for his role in molesting M.C. and A.C. (Tape 21 of Trial.) He initially denied that Alvey was involved. Two days before his trial was scheduled to begin, and

approximately two weeks before Alvey's trial, J.P.F. changed his story and implicated Alvey.  In exchange for his testimony against Alvey, he was given a plea agreement that reduced his range of imprisonment from over one-hundred years to at most nine years.  (Tape 22 of Trial.)

In addition to J.P.F.'s testimony, the prosecution presented the victims' videotaped depositions; a "safe house" interview with A.C.; and the testimony of the victims' parents and foster parents, a child forensic interviewer who interviewed A.C., a child psychotherapist who treated the C children, a child psychologist who treated A.C. and M.C., law enforcement personnel, and a forensic nurse examiner.  (Doc. 19 Ex. G at 2-21.)  Several of these witnesses recounted statements A.C. and M.C. made to them regarding being sexually abused by Alvey and J.P.F.  (*Id.*)  The forensic nurse examiner also testified that her examination of M.C.'s anus showed scarring and deep tears into the sphincter and indicated a "penetrating trauma."  (Tape 25 of Trial.)  Her examination of A.C.'s anus showed "flattened folds," a nonspecific finding that did not conclusively point to abuse.  (Tape 26 of Trial.)

The only defense witness was a psychotherapist who evaluated the investigative techniques used in this case.  She testified that the case presented very serious contamination issues because of the long delay between when the abuse was first suspected and when it was reported to Child Protective Services.  In the intervening time, the children talked to many adults and each other about the abuse and the adults talked with each other.  The children's therapists encouraged them to blame Alvey and J.P.F. and told them that Alvey and J.P.F. were known abusers and that they could help others by reporting the abuse.  (Doc. 19  Ex. G at 21-22.)

The jury convicted Alvey of all forty counts.  (*Id.* at 23.)  Alvey appealed, arguing primarily that the evidence was insufficient and that the trial court erred by refusing to sever the counts

involving A.C., M.C., and J.P.F. and by admitting bolstering witness testimony to support the children's claims. (*Id.* at 23-31.) The New Mexico Court of Appeals rejected the severance and bolstering arguments. (*Id.* Ex. J at 11-17.) The court held, however, that there was insufficient evidence to support Alvey's convictions on two counts of CSP of A.C. (*Id.* at 7-10.) The New Mexico Supreme Court denied certiorari. (*Id.* Ex. M.) Alvey then filed a petition for writ of habeas corpus, which the trial court summarily dismissed. (*Id.* Ex. P, R.) The New Mexico Supreme Court again denied certiorari. (*Id.* Ex. T.)

## EXHAUSTION

Alvey raises twenty-eight grounds of error in his federal habeas application. Respondents argue that four of these grounds are unexhausted because they were not raised in state court. They do not, however, argue that those four grounds are procedurally defaulted. Alvey contends that all of the grounds were raised in his state habeas petition.

From reading Alvey's state habeas petition, it is unclear whether it included all of the grounds he raises here. Nevertheless, I have considered all of the grounds and found them to be unavailing. I therefore recommend that they be denied on their merits. *See* 28 U.S.C. § 2254(b)(2) (providing that a habeas application "may be denied on the merits, notwithstanding the failure of the applicant to exhaust" state court remedies).

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), this Court may not grant a writ of habeas corpus on an issue decided on the merits by a state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). In other words, the writ may issue if the state court arrived at a

conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Court has on a set of materially indistinguishable facts, or unreasonably applied the correct governing legal principle to the facts of the case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Stevens v. Ortiz*, 465 F.3d 1229, 1234-35 (10th Cir. 2006). The writ may also issue if the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). When reviewing a summary disposition by a state court, the focus is on the state court's result, rather than the lack of reasoning. *Stevens*, 465 F.3d at 1235.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Alvey asserts that his trial attorneys were ineffective in fifteen ways. He raised ineffective assistance of counsel in his state habeas petition, which was summarily dismissed.

To establish ineffective assistance of counsel, a habeas applicant must satisfy a two-part test. First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694.

#### *Multiplicity*

In his first ground, Alvey argues that his attorneys should have challenged the indictment as being multiplicitous. An indictment is multiplicitous if it charges one offense in more than one count.

*United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987); *accord Herron v. State*, 805 P.2d 624, 626 n.4 (N.M. 1991).  A multiplicitous indictment violates the proscription against double jeopardy.  *See United States v. Brandon*, 17 F.3d 409, 422 (1st Cir. 1994).  When successive acts have been charged as a separate crime under the same statute, the question of whether the indictment is multiplicitous becomes one of statutory construction; if the legislature intended separate punishments for each act, the indictment is not multiplicitous.  *See Esch*, 832 F.2d at 541-42; *Herron*, 805 P.2d at 626.

The New Mexico Supreme Court has held that the statute defining CSP "cannot be said as a matter of law to evince a legislative intent to punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others."  *Herron*, 805 P.2d at 628.  To determine whether an act is distinct, the following factors are relevant: 1) temporal proximity of penetrations; 2) whether the victim was moved or repositioned between penetrations; 3) existence of an intervening event; 4) sequencing of penetrations; 5) defendant's intent as evidenced by his conduct and utterances; and 6) number of victims.  *Id.*

Applying these factors here, it is obvious that the indictment was not multiplicitous.  The acts occurred over several years in different places upon two victims and involved different methods.  *See, e.g., Esch*, 832 F.2d at 541-42 (upholding convictions on sixteen counts of sexual exploitation of children based on sixteen photographs even though the photographs depicted the same two children and were produced in the same photographing session); *Herron*, 805 P.2d at 629-30 (upholding conviction on five counts of CSP against one victim where they occurred over the span of one hour in different rooms, involving different orifices and repositioning of the victim).

Counsel cannot be held ineffective for failing to raise a meritless issue.  *United States v.*

*Dixon*, 1 F.3d 1080, 1083 n.5 (10th Cir. 1993), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999); *see also Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) ("[T]he Sixth Amendment does not require that every possible motion be filed, but only those having a solid foundation."). Accordingly, because the indictment was not multiplicitous, Alvey's attorneys were not ineffective in failing to challenge it on that ground.

### *Bill of Particulars*

Alvey asserts in his second and twelfth grounds that his attorneys should have demanded a bill of particulars and should have attempted to lessen the charging periods. Upon motion of the defendant, a trial court may order the State to file a statement of facts setting forth details of the offense, such as time and place. *See* NMRA Rule 5-205(C). This procedure replaces the previous procedure involving the bill of particulars. *See id.* committee commentary.

Alvey relies on *State v. Baldonado*, 955 P.2d 214, 216 (N.M. Ct. App. 1998), in which the New Mexico Court of Appeals examined "the proper balance to be struck between the due process imperative to provide reasonable notice of charges against a criminal defendant, and the need to allow the State reasonable leeway in prosecuting crimes committed against children of tender years." In that case, the charging period was two years. *Baldonado*, 955 P.2d at 216. Although the court noted that this period "approach[ed] the outer edges of constitutional propriety," it declined to impose any per se rule as to when a charging period is too long. *Id.* at 219. Instead, a trial court must determine whether the State could reasonably have provided greater specificity of the times of the alleged offenses and if so, whether the State's failure in this regard prejudiced the defendant. *Id.* at 216. In evaluating prejudice, the potential of an alibi defense should be considered. *Id.* at 221. In a subsequent case, the court of appeals stated, "Prejudice must be both actual, not based on pure

conjecture, and substantial in its impact on the defense." *State v. Ervin*, 41 P.3d 908, 912 (N.M. Ct. App. 2001).

Here, the indictment charged the various counts in periods of time ranging from as short as one month to as long as twelve months—at worst, half the time at issue in *Baldonado*. (RP at 140-48.) Alvey has pointed to nothing that suggests the State could reasonably have provided greater specificity. Even assuming that the State could have reasonably provided greater specificity, Alvey has not demonstrated prejudice.

Alvey focuses on the time after the victims moved out of the duplex in Las Vegas. He does not directly assert that he had an alibi during this time. He does, however, claim that he had only limited contact with the victims after they moved. This fact was brought out during the trial. Alvey has not explained how narrowing the charging periods would have assisted him in preparing his defense. Accordingly, he has not demonstrated a reasonable probability that the result of the trial would have been different if counsel had sought a statement of facts or otherwise narrowed the charging periods.

### *Immunity*

In his third ground, Alvey complains that his counsel failed to demand disclosure of grants of immunity. Both the prosecution and the defense brought out the fact that J.P.F. was granted a plea deal in exchange for testifying against Alvey. In fact, a central part of the defense strategy involved attacking J.P.F.'s credibility as a result of the plea deal. Alvey states that the victims' parents were clearly guilty of negligence and other crimes and should have been prosecuted. "If they had . . . been granted immunity," Alvey argues, "it should have been disclosed to the jury." (Doc. 30 at 5.) It is evident from the way Alvey phrases this argument that it is based on speculation. I have found

nothing in the record to indicate that the parents were granted immunity. Accordingly, Alvey has not demonstrated that his attorneys were deficient in this regard.

### *Investigation and Witnesses*

In his fourth and fifth grounds, Alvey alleges that his counsel failed to stay in contact with him or discuss strategy, failed to conduct any pretrial investigation, and failed to contact any of the witnesses on a list he gave them. Alvey's main contention is that a neighbor, rather than Alvey himself, taught J.P.F. his sexually abusive behavior. He claims that he told his counsel and a defense investigator about the neighbor and drew them a map to his house, but they failed to investigate the neighbor.

From conversations outside the presence of the jury, it appears that J.P.F. claimed that multiple people had sexually abused him. Before he implicated Alvey, he apparently named two family members, including Alvey's oldest son, and two neighbors as his abusers. (Tape 21 of Trial.) The prosecutor indicated that if the defense presented this evidence to the jury, she would attempt to rebut it by presenting evidence that Alvey's oldest son learned his abusive behavior from Alvey. (*Id.*)

Alvey's hypothesis seems to be that if the jury had been informed that a neighbor molested J.P.F., the jury would have inferred that J.P.F. learned his sexually abusive behavior from the neighbor instead of Alvey. Presumably, this would tend to make the jury believe that J.P.F. acted alone in molesting M.C. and A.C.

Assuming that the defense could have located the neighbor to whom Alvey refers, it is highly doubtful that the neighbor would have admitted molesting J.P.F. Besides J.P.F.'s claim, there is no indication of any other evidence that would show that J.P.F. was molested by the neighbor.

9

Therefore, at most, the defense could have cross-examined J.P.F. about his alleged molestation by the neighbor.  J.P.F. would presumably have testified that, in addition to being molested by Alvey, he was also molested by the neighbor.[1]  There is no indication that the neighbor was involved in the molestation of M.C. and A.C.  Given the fact that M.C. and A.C. directly implicated Alvey before J.P.F. did, it is difficult to conceive that the result of the trial would have been different if the jury had been informed merely that J.P.F. was molested by someone else in addition to Alvey.  Moreover, this may have opened the door for the prosecution to question J.P.F. about his claim that Alvey's oldest son also molested him.  This, in turn, could have led the jury to more negative inferences against Alvey.

Alvey additionally faults his attorneys for not calling Stella, his mother and brother, and his older children to testify.  They would have testified primarily as character witnesses.  Stella also would have testified regarding Alvey's lack of opportunity to commit the crimes.[2]  The State had notified the defense of its intent to question any character witnesses about the sexual content of letters Alvey sent to Stella while awaiting trial.  (RP at 104-05.)[3]  Again, Alvey has not demonstrated a reasonable probability that the result of the trial would have been different if these witnesses, who had obvious biases and no direct knowledge regarding the crimes, had testified.

---

[1] His testimony alluded to this fact in any event.  When asked by the prosecutor why he began molesting the C children, J.P.F. explained that it was because he was treated the same way by Alvey "and everybody else."  (Tape 21 of Trial.)

[2] Alvey acknowledges that Stella had been arrested "for refusing to perjure herself" against him and that his attorneys told him that her attorney would not let them "near her."  (Doc. 1 Background at 30.)

[3] These letters are discussed in more detail in my analysis of Alvey's seventh ground below.

*Speedy Trial*

In his sixth ground, Alvey contends that his trial counsel deprived him of a speedy trial by obtaining two continuances.  The record reflects that Alvey was taken into custody on December 28, 2000, was arraigned on August 14, 2001, and was tried beginning on June 3, 2002.  (RP at 22, 41.) Thus, approximately seventeen months elapsed between arrest and trial.

In January 2002, Alvey's counsel filed a motion for continuance because of needing additional time to prepare.  (RP at 47.)  During the same time frame, counsel also filed a motion to withdraw because she had five other trials scheduled during the approximate time of Alvey's trial and Alvey was not amenable to a continuance.  (RP at 58.)  The court did not rule on the motion to withdraw, but did grant the continuance.  (RP at 63, 286.)

In February 2002, counsel filed another motion for continuance because of needing additional time to prepare.  (RP at 68.)  At the hearing on this motion, counsel stated that although her client would prefer not to have a continuance, he understood that one was necessary to enable her to prepare adequately.  (Tape of 3/5/02 Hearing.)  The judge asked Alvey directly if this was true, and Alvey agreed.  (*Id.*)  Counsel also mentioned that several boxes of discovery and numerous videotapes had to be reviewed.  (*Id.*)  The judge granted the continuance.  (RP at 72.)

Applying the balancing test for speedy trial claims, the seventeen-month delay is sufficient to warrant scrutiny, but the reason for the delay was to give Alvey's attorney additional time to prepare and Alvey has not identified any cognizable prejudice.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).[4]  Alvey has not overcome the presumption that obtaining the continuances was sound trial

---

[4] The only purported prejudice asserted by Alvey is his conjecture that the continuances were really sought to give the State time to coerce J.P.F. into implicating him.  This conjecture is part of Alvey's theory that the prosecutor and defense counsel entered into a conspiracy under which defense counsel would lose

strategy—considering the complexity of this case, the multiple trials counsel faced when she sought the first continuance, and his agreement to the second continuance.[5]  Accordingly, Alvey has not demonstrated that counsel's performance fell below an objective standard of reasonableness.

### *Psychological Evaluation*

In his seventh ground, Alvey argues that his trial counsel should have introduced into evidence a favorable report from a psychological evaluation or called the psychologist who conducted the evaluation as a witness.  Respondents have submitted an affidavit from one of Alvey's trial attorneys, stating that although the report indicated that Alvey's "test results were not consistent with those of a pedophile, the evaluation also contained some information that was not favorable to his case, and I determined as a matter of trial strategy not to introduce the evaluation."  (Doc. 18 Ex. 1.)  Alvey does not dispute that counsel made a strategic decision not to introduce the report, he simply disputes whether the strategy was sound.

The report states that Alvey's responses to certain tests administered by the psychologist "indicate that he does not perceive children as sexually arousing [and that] [h]e has not endorsed the cognitive distortions that are often held by persons who have engaged in sexual behavior with children."  (Report at 13.)[6]  He also "showed no clinically significant arousal to any visual materials

---

Alvey's case in exchange for a favorable outcome in another case.  There is nothing other than Alvey's imagination to support the existence of such a conspiracy.  Moreover, the purpose of a speedy trial is to prevent the loss of witnesses or their memories, not to prevent the emergence of additional witnesses. *Skinner v. State*, 575 A.2d 1108, 1117 (Del. 1990).

[5] Alvey contends that counsel did not actually use the additional time to prepare for his trial because she conducted no investigation and contacted none of his witnesses.  I have addressed these contentions in my discussion of the fourth and fifth grounds above.

[6] The report is attached as an unmarked exhibit to Alvey's federal habeas application.

depicting children, either boys or girls." (*Id.* at 14.)

Alvey's responses to the Child Abuse Potential Inventory Form VI, however, "resulted in elevations on the 'lie scale' and the 'faking good index.' These elevations indicate that he has responded in an unrealistically positive manner to the test items." (*Id.* at 12).

Furthermore, the report refers to letters Alvey wrote to his wife during his pretrial incarceration.[7] The letters describe "sexually graphic fantasies he has had about his wife." (*Id.* at 8-9.) Most of the letters depict Alvey watching his wife in sexual scenarios with multiple other men. One of the letters describes her being sexually involved with a pony and another as being sexually involved with a large dog. (*Id.* at 9.) When asked about the bestiality fantasies, which the psychologist characterized as "clinically unusual," Alvey stated, "'I wanted to see if I could get her to do it,' but when she declined, he did not persist or pressure her." (*Id.*) Although the fantasies depicted in the letters are different from the charges against Alvey in that they do not involve children, they are similar in that they involve an element of voyeurism.

Thus, the report contained both positive and negative information. Standing alone, the lurid nature of the fantasies, particularly the bestiality fantasies, had the potential to be highly inflammatory and prejudicial to Alvey's case. Considering that potential, along with the similarity of the fantasies to the charges and the elevated 'lie scale' and 'faking good index' readings, an objectively reasonable attorney could have concluded that the report and the psychologist's testimony would do Alvey more harm than good. Consequently, Alvey has not overcome the presumption of sound trial strategy.[8]

---

[7] The letters were seized by jail officials and turned over to the prosecution. (RP at 104.)

[8] Alvey states that counsel did not discuss strategy with him. Although counsel should discuss strategy with the client when feasible and appropriate, decisions regarding which evidence and testimony should be introduced are ultimately for counsel to make. *See United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir.

*J.P.F.'s Testimony*

Alvey's eighth, ninth, and fourteenth grounds all relate to J.P.F.'s testimony.  In his eighth

ground, Alvey criticizes his counsel for not attending two depositions of J.P.F.; in his ninth ground,

he denounces counsel for failing to file a motion for a *James* hearing regarding J.P.F.'s statements

implicating Alvey; and in his fourteenth ground, he faults counsel for failing to introduce the prior

statements in which J.P.F. denied that Alvey was involved.

Alvey claims that his attorneys failed to attend two depositions given by J.P.F.  Alvey has

copies of the deposition transcripts, but he has not provided them to this Court.  Although he claims

they are part of the record of this case, I cannot locate them in the record produced by Respondents

and there is nothing to indicate that they were ever made part of the record.  The record does not

reflect that J.P.F.'s deposition testimony was admitted into evidence at trial.  It does reflect, however,

that the prosecution made the deposition transcripts available to the defense.  (Tape of 5/28/02 Status

Conference.)

Because I do not have the transcripts, I will accept Alvey's characterization of J.P.F.'s

deposition testimony as accurate.  He claims that J.P.F. was evasive and had to be constantly

reminded to implicate Alvey.  J.P.F. initially denied that he saw Alvey abuse A.C., but then retracted

this denial when he realized this was not what the State wanted to hear.  J.P.F. also stated that he was

abused by two neighbors.

Alvey does not explain how his defense would have been improved if his attorneys had

attended the depositions.  The deposition testimony was not admitted at trial, the transcripts were

made available to the defense, and the defense was able to cross-examine J.P.F. at trial.  Alvey has

---

1986); *State v. Singleton*, 28 P.3d 1124, 1129 (N.M. Ct. App. 2001); NMRA Rule 16-102(A).

not demonstrated a reasonable probability that the outcome of the trial would have been different if counsel would have attended the depositions.

In a related vein, Alvey faults counsel for failing to introduce prior statements in which J.P.F. denied that Alvey was involved.  Defense counsel thoroughly cross-examined J.P.F. regarding his previous denials that Alvey was involved.  Counsel questioned J.P.F. about particular and repeated denials that he made to law enforcement personnel.  Counsel further asked J.P.F. if he was lying when he made those denials.  (Tape 23 of Trial.)  Alvey has not demonstrated a reasonable probability that the outcome of the trial would have been different if the actual statements had been introduced.

Alvey's final complaint regarding J.P.F.'s testimony is that counsel failed to request a *James* hearing regarding J.P.F.'s deposition testimony to establish lack of veracity and bias.  In federal court, a *James* hearing is held to determine the admissibility of out-of-court statements by co-conspirators pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.  *See United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (citing *United States v. James*, 590 F.2d 575 (5th Cir. 1979)).  Such statements are admissible if the court finds that a conspiracy existed between the declarant and the defendant and that the statements were made in the course and furtherance of the conspiracy.  *Id.*

As noted above, the deposition testimony was not admitted into evidence.  Furthermore, having reviewed the record, I can find no indication that any out-of-court statements falling within the purview of Rule 801(d)(2)(E) (or a comparable state rule) were admitted into evidence.  Although J.P.F. certainly implicated Alvey during out-of-court statements to the prosecution, those statements by their very nature could not have been in the course and furtherance of the conspiracy between J.P.F. and Alvey.  Thus, a request for a *James* hearing would have been inappropriate, and counsel's failure to make such a request does not amount to deficient performance.

15

### *Improper and Immaterial Evidence*

In his tenth ground, Alvey complains that counsel failed to object to improper and immaterial evidence. In particular, he refers to hairnets and toys belonging to M.C. and A.C. An investigator testified that he found the hairnets and toys in the attic of the duplex. (Tape 24 of Trial.) A.C., M.C., and J.P.F. testified that J.P.F. would take A.C. and M.C. into the attic to molest them. (Videotape Depo. of A.C.; Videotape Depo. of M.C.; Tape 22 of Trial.) A.C. testified that J.P.F. would wear a hairnet during these sessions. (Videotape Depo. of A.C.) J.P.F. admitted that he shoplifted hairnets and stashed them in the attic. (Tape 22 of Trial.) It was undisputed that Alvey did not participate in the molestation that occurred in the attic. Alvey therefore argues that the hairnets and toys were irrelevant. He believes that this evidence was used to suggest that he did participate in the sessions in the attic.

In New Mexico, "[a] relevant reason for admitting evidence is corroboration of a witness." *State v. Wright*, 498 P.2d 695, 697 (N.M. Ct. App. 1972). The hairnets and toys were relevant to corroborate the testimony of A.C., M.C., and J.P.F. There is nothing in the record to indicate that they were used to suggest that Alvey participated in the molestation in the attic. In her closing argument, the prosecutor merely noted that the hairnets and toys corroborated the claims of A.C. and M.C. that they were molested in the attic by J.P.F. (Tape 31 of Trial.) One of Alvey's attorneys then reiterated in her closing argument that this evidence only corroborated A.C.'s and M.C.'s claims that they were molested by J.P.F. (Tape 32 of Trial.) Alvey has not demonstrated that counsel's failure to object to this evidence was objectively unreasonable, nor has he shown a reasonable probability that the result of the trial would have been different without the evidence.

Alvey also complains about the admission of enlarged family pictures depicting him with long

16

hair and a beard and about the prosecutor's characterization of one of those pictures. At trial, Alvey was clean-shaven and had short hair. It is unclear exactly which pictures he finds objectionable. However, in her closing argument, the prosecutor compared a picture of Alvey to a picture showing how J.P.F. looked when the abuse of A.C. and M.C. began. Noting the differences in their sizes and the testimony that Alvey had threatened A.C. and M.C., the prosecutor stated that it was not surprising that they implicated J.P.F. before they implicated Alvey because Alvey was "big, hairy, and scary." (Tape 31 of Trial.)

In New Mexico, photographs are relevant and admissible to clarify and illustrate testimony. *State v. Hutchinson*, 661 P.2d 1315, 1323 (N.M. 1983). During closing argument, a prosecutor is allowed wide latitude, provided that her remarks are based on the evidence and fair and reasonable inferences to be drawn therefrom. *State v. Duffy*, 967 P.2d 807, 822 (N.M. 1998). Pursuant to this authority, both the admission of the photographs and the prosecutor's remark were permissible. *See id.* at 822-23; *see also State v. Gillette*, 699 P.2d 626, 633 (N.M. Ct. App. 1985) (holding that photograph of defendant and child victim was admissible in CSP case to illustrate disparity between the size of the defendant and the victim when the molestation began); *State v. Jacobs*, 575 P.2d 954, 956 (N.M. Ct. App. 1978) (holding that mug shots showing the defendant with long hair and a beard was admissible to assist in his identification at trial because his appearance had changed drastically), *overruled on other grounds by State v. Moore*, 782 P.2d 91 (N.M. Ct. App. 1989). Therefore, counsel was not deficient in failing to object to them.

### Cross-Examination

In his eleventh ground, Alvey asserts that counsel refused to cross-examine the majority of the State's witnesses. In particular, he argues that counsel should have cross-examined witnesses

regarding their biases and past contradictory statements.  Contrary to Alvey's assertion, his attorneys did cross-examine the vast majority of the State's witnesses.  Alvey does not identify any biases or contradictory statements.  To the extent he is referring to J.P.F.'s biases and past contradictory statements, I have already addressed those.  Alvey has failed to demonstrate either deficient performance or prejudice.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe Defendant's pro se petition, . . . we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."); *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989) ("The failure to cross-examine a witness does not necessitate a finding of ineffective assistance of counsel.").

### *Refusal to Allow Alvey to Testify*

In his thirteenth ground, Alvey claims that counsel refused to allow him to testify because of the letters to his wife.[9]  Assuming that counsel actually refused to allow Alvey to testify, he must still demonstrate that he was prejudiced by this refusal.  The prosecutor informed the defense and the court that if Alvey testified, she intended to cross-examine him about his fantasies of watching his wife perform sex acts with multiple other men.  (Tape of 5/30/02 Hearing.)  This questioning would have been prejudicial to Alvey because it would support the prosecution's theory that Alvey enjoyed being a voyeur.  On the other hand, Alvey does not indicate that his direct testimony would have consisted of anything more than denials of the victim's claims.  Balancing the benefit of his denials

---

[9] Alvey alleges that the letters were illegally read and seized, but he has not established that allegation. *See Beville v. Ednie*, 74 F.3d 210, 214 (10th Cir. 1996) ("In order to enforce permissible restrictions which are reasonably related to substantial government interests, corrections officers must be able to inspect all outgoing mail."); NMRA Rule 11-505(D)(1) (stating that the husband-wife privilege does not exist "in proceedings in which one spouse is charged with a crime against . . . a child of either").

against the damage from the voyeuristic fantasies, Alvey has not shown a reasonable probability that the result of the trial would have been different if he had testified.

### *Docketing Statement*

In his fifteenth ground, Alvey claims that one of his trial attorneys filed a deficient docketing statement for his appeal.  After Alvey's docketing statement was filed, the court of appeals issued a notice of proposed summary affirmance.  The notice stated that the docketing statement did not provide sufficient facts or argument.  (Doc. 19 Ex. D.)  An assistant appellate defender then filed a memorandum in opposition to the proposed summary affirmance and a motion to amend the docketing statement.  (*Id.* Ex. E.)  The court of appeals proceeded to assign the appeal to the general calendar.  (*Id.* Ex. F.)

Once the appeal was placed on the general calendar, the court of appeals decided the case on the basis of the trial record and the arguments made in appellate counsel's brief.  *See* NMRA Rule 12-210(B).  Therefore, trial counsel's failure to provide sufficient facts and argument could not have prejudiced Alvey.

### *Summary*

Having considered all of Alvey's allegations of ineffective assistance of counsel, I conclude that each of them fails either because Alvey's attorneys were not deficient, because any deficiency did not prejudice Alvey, or both.  Therefore, the state court's summary dismissal of the ineffective assistance claims did not involve an unreasonable application of *Strickland*.

### GRAND JURY

In his sixteenth ground, Alvey asserts that he was denied his right to testify before the grand jury because the State convened the grand jury four days before the date in his target letter.  In his

19

seventeenth ground, Alvey complains of the prosecution's failure to present exculpatory evidence to the grand jury.

New Mexico grants a target of a grand jury investigation the right to testify and to have exculpatory evidence presented. *See* N.M. STAT. ANN. § 31-6-11(C)(3)-(4); *State v. Lara*, 797 P.2d 296, 305 (N.M. Ct. App. 1990). However, there are no comparable federal rights. *See United States v. Williams*, 504 U.S. 36, 52 (1992). Errors of state law provide no basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 & n. 2 (1991). Furthermore, the prosecutorial misconduct alleged by Alvey only affected the grand jury's finding of probable cause. Because Alvey was subsequently found guilty beyond a reasonable doubt, any errors relating to the grand jury proceeding were rendered harmless by the verdict. *See United States v. Crockett*, 435 F.3d 1305, 1316 (10th Cir. 2006); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245 (10th Cir. 1996).

## INDICTMENT

In his eighteenth ground, Alvey asserts that the indictment was defective because it failed to provide the dates and locations of the crimes. In his nineteenth ground, he argues that the indictment was defective because it was multiplicitous. I have already noted in my discussion of Alvey's first ground that the indictment was not multiplicitous. As for Alvey's contention that the indictment was required to include dates and locations, a charging instrument is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense. *See Hamling v. United States*, 418 U.S. 87, 117 (1974). Alvey's indictment satisfied this standard. *See, e.g., Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990) (summarily rejecting argument that information charging CSP of a child during a three-year period was deficient because it failed to include specific dates). Alvey

20

does not explain how his defense would have changed if the indictment had been more specific.

## VINDICTIVE PROSECUTION

In his twentieth ground, Alvey claims that the prosecutor filed the "multiplicitous" indictment to punish him for refusing to accept a plea bargain.  To establish a claim of prosecutorial vindictiveness, the defendant must prove either actual vindictiveness or a realistic likelihood of vindictiveness that will give rise to a presumption of vindictiveness.  *United States v. Lampley*, 127 F.3d 1231, 1245 (10th Cir. 1997).  The Supreme Court has generally rejected the presumption of prosecutorial vindictiveness in the pretrial context.  *Id.*; *see United States v. Goodwin*, 457 U.S. 368, 381-84 (1982).  "[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."  *Lampley*, 127 F.3d at 1245 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).  Thus, "a prosecutor may threaten to charge a greater offense if a defendant will not plead guilty to a lesser one, as long as the prosecutor has probable cause to believe that the defendant committed the greater offense."  *United States v. Sarracino*, 340 F.3d 1148, 1178 (10th Cir. 2003).

Alvey points to nothing other than the facts that he refused to plead guilty and that the prosecutor prepared the multi-count indictment.  Under the above authority, this is insufficient to raise a colorable claim of vindictiveness.

## PERJURY AND MANUFACTURED EVIDENCE

In grounds twenty-one through twenty-three, Alvey alleges that the prosecutor conspired with witnesses and others to suborn perjury and manufacture false evidence against him.  He refers again to the testimony of J.P.F. and the victims' parents, whom he believes were induced to commit perjury by the plea bargain and purported grants of immunity.  As noted above, there is nothing in the record

regarding a grant of immunity to the parents, and the mere fact that J.P.F. testified pursuant to a plea bargain does not mean he committed perjury. The plea bargain was brought out at trial, and the jury was free to consider it in judging J.P.F.'s credibility. Alvey also points out that one of A.C.'s written statements appeared to have a "grade" of "A+." Again, the jury could consider this information in evaluating the letter. Alvey further complains that the prosecution filed multiple supplemental notices of disclosure after he was indicted. Rather than demonstrating any sort of nefarious purpose, the disclosures show that the prosecution complied with its discovery obligations. *See* NMRA Rules 5-501, 5-505. There is simply nothing to support Alvey's allegations about perjury and manufactured evidence.

### IMMATERIAL EVIDENCE

In his twenty-fourth ground, Alvey argues that the hairnets and toys should not have been admitted into evidence because they were used by the prosecution to establish that he was guilty because J.P.F. was guilty. He asserts that it was improper to use J.P.F.'s guilt to establish his guilt. *See United States v. Pedraza*, 27 F.3d 1515, 1525 (10th Cir. 1994) ("It is fundamental that the guilt of a coconspirator may not be used to establish the guilt of a defendant."). A federal court may not grant habeas relief based on a state court evidentiary ruling unless the ruling rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *Elliott v. Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001).

Alvey has not shown that the admission of this evidence rendered his trial fundamentally unfair. Even without the evidence, there was overwhelming evidence that J.P.F. was guilty of CSP on A.C. and M.C.—after all, J.P.F. pled guilty to these crimes and testified at Alvey's trial that he committed them. Alvey does not complain about the admission of J.P.F.'s guilty plea into evidence. Moreover,

the evidence regarding the attic cut both ways.  Although it reinforced the victims' credibility and

J.P.F.'s guilt, it also bolstered the defense theory that J.P.F. was the sole perpetrator because it was

undisputed that Alvey was not present during any of the molestation that occurred in the attic.

### SELECTIVE PROSECUTION

In his twenty-fifth ground, Alvey asserts that the prosecutor engaged in selective prosecution

because she did not investigate the neighbor or neighbors who may have molested J.P.F.  "Selective

prosecution or enforcement is not unconstitutional if the selection is not based deliberately on an

unjustifiable categorization such as race and religion."  *United States v. Dukehart*, 687 F.2d 1301,

1303 (10th Cir. 1982).  To obtain discovery on a claim of selective prosecution, a petitioner must

satisfy a rigorous standard by producing some evidence of both discriminatory effect and

discriminatory intent.  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).  In

this case, there is nothing to indicate that the prosecutor's decision was based on constitutionally

impermissible factors.

### INSUFFICIENT EVIDENCE

In his twenty-sixth ground, Alvey argues that the State did not meet its burden of proof

because the victims did not testify to each element of the charges.  The New Mexico Court of Appeals

considered this ground on the merits and rejected it, with the exception of two counts of CSP

pertaining to A.C.  (Doc. 19 Ex. J at 2-11.)[10]

---

[10] Respondents respond to this ground and to ground twenty-eight by noting that each was addressed
by the New Mexico Court of Appeals and decided adversely to Alvey.  Citing AEDPA, they state "This is,
therefore, not a ground upon which federal habeas relief can be granted."  (Doc. 18 at 18-19.)  Not only is this
argument singularly unhelpful, it also reveals a fundamental misunderstanding of the role that federal courts
play in habeas proceedings.  The issues raised in a habeas case will almost always have been addressed and
decided adversely to the applicant by a state court.  *See* 28 U.S.C. § 2254(b)(1) (general rule of exhaustion).
AEDPA requires federal courts to accord great deference to state court decisions, but it does not entirely

Under *Jackson*, evidence of guilt is sufficient if, when viewed in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The New Mexico Court of Appeals applied the *Jackson* standard to Alvey's insufficiency argument.  Therefore, under 28 U.S.C. § 2254(d)(1), the issue before me is whether the court of appeals "reasonably decided that a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Torres v. Lytle*, 461 F.3d 1303, 1313 (10th Cir. 2006) (quoting *Jackson*, 443 U.S. at 319).  The Tenth Circuit has described this standard of review as "deference squared." *Id.*[11]  The issue is not whether this Court "concludes in its independent judgment that the relevant state-court decision applied [*Jackson*] erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

The New Mexico Court of Appeals upheld Alvey's convictions for three counts of intimidating A.C. and one count of intimidating M.C.  (Doc. 19 Ex. J at 10.)  M.C. testified that Alvey threatened to hurt A.C. and C.C. if he reported the abuse.  (Videotape Depo. of M.C.)  A.C. testified that when Alvey first starting abusing him, he threatened to hurt M.C. and C.C. and his cat and dog if he reported the abuse.  He said that Alvey also threatened to report the children's father for using drugs.

---

insulate those decisions from review.

[11] Alternatively, under 28 U.S.C. § 2254(d)(2), the issue would be whether the decision of the court of appeals was based on an unreasonable determination of the facts in light of the evidence presented.  In the Tenth Circuit, "there is some debate" as to whether a challenge to the sufficiency of the evidence presents a question of law, subject to review under section 2254(d)(1), or a question of fact, subject to review under section 2254(d)(2). *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003).  However, the court has noted that other circuits treat the question as a legal one. *Id.* at 1152.  The court has also treated the question as a legal one when, as here, the habeas applicant did not specifically contend that the state court's factual findings were erroneous. *See id.* at 1151.

(Videotape Depo. of A.C.)  A.C. specified two subsequent times that Alvey threatened him.  (State's Trial Ex. 24, 28.)  All this evidence was sufficient to support the intimidation convictions.  *See* N.M. STAT. ANN. § 30-24-3(A)(3) (intimidation of a witness includes threatening a person with the intent to keep the person from reporting information related to the commission of a felony).

The court of appeals held that the two counts of child abuse against J.P.F. were supported by J.P.F.'s testimony.  (Doc. 19 Ex. J at 10.)  J.P.F. testified that he engaged in two particular sexual incidents—one with M.C. and one with both M.C. and A.C.—upon Alvey's instructions.  (Tape 21 of Trial.)  This was sufficient to support the child abuse convictions.  *See* N.M. STAT. ANN. § 30-6-1(D)(1) (child abuse includes intentionally or knowingly causing or permitting a child to be placed in a situation that may endanger the child's health).

Similar evidence supported the two counts of conspiracy to commit CSP.  (Doc. 19 Ex. J at 11.)  There was evidence that Alvey assisted and watched J.P.F. commit CSP on M.C. and A.C. (Tape 21 of Trial; Videotape Depo. of A.C.; Videotape Depo. of M.C.)  From this evidence, the jury could have inferred the existence of an agreement to commit CSP.  *See* N.M. STAT. ANN. § 30-28-2(A) (conspiracy includes knowingly combining with another to commit a felony).

The court of appeals upheld Alvey's conviction on seventeen counts of CSP on M.C., by anal intercourse, as an accessory.  The court noted that M.C. testified that Alvey watched him being anally penetrated by J.P.F. one or two times a week while M.C. lived in the duplex.  (Doc. 19 Ex. J at 10.)  Although this evidence supports Alvey's conviction for the eight counts that were alleged to have occurred before August 1996, it does not support the nine counts that were alleged to have occurred after M.C. moved out of the duplex.  However, M.C. actually testified that Alvey watched one or two times a week in the Alveys' portion of the duplex and watched approximately once every two weeks

at the Yucca house.  (Videotape Depo. of M.C.)  The evidence was therefore sufficient  to support all the CSP counts related to M.C.  *See* N.M. STAT. ANN. § 30-1-13 (culpability as an accessory derives from procuring, counseling, aiding, or abetting the commission of a crime); *id.* § 30-9-11(A) (CSP includes intentionally causing a person to engage in anal intercourse).

Finally, the court of appeals upheld Alvey's conviction on thirteen counts of CSP on A.C. by oral or anal intercourse.  The court's analysis, which I incorporate by reference in the interest of brevity, detailed the specific evidence that supports all these counts.  (Doc. 19 Ex. J at 3-7.)  Having reviewed the record from the trial, I conclude that the court did not unreasonably apply the *Jackson* standard to the facts of this case.  *See* N.M. STAT. ANN. § 30-1-13 (indicating that accessories may be liable as principals); *id.* § 30-9-11(A) (CSP includes intentionally causing a person to engage in fellatio or anal intercourse).

BOLSTERING

In his twenty-eighth ground, Alvey complains that the State relied on repetitive, improperly bolstering testimony.  On appeal, Alvey contended that testimony from six of the State's witnesses was used to enhance the victims' credibility.  The witnesses were the two foster parents, the child forensic interviewer, the child psychologist, the child psychotherapist, and the forensic nurse examiner. Each of these witnesses repeated what the victims had told them about being sexually molested by J.P.F. and Alvey.  (Doc. 19 Ex. G at 23-26.)  Noting that bolstering is not a problem in itself, the New Mexico Court of Appeals concluded that the trial court did not err in admitting the testimony.  (*Id.* Ex. J at 11-13.)

As noted above, a federal court may not grant habeas relief based on a state court evidentiary ruling unless the ruling rendered the trial so fundamentally unfair as to constitute a denial of federal

26

constitutional rights. *Elliott*, 248 F.3d at 1214. Alvey's argument seems to be that the six witnesses improperly vouched for the victims' credibility. Having listened to the witnesses' testimony, I conclude that the testimony did not render the trial fundamentally unfair.

None of the witnesses testified that children generally tell the truth about sexual abuse. Although the two foster parents testified regarding what the children told them, they did not expressly state that they believed the allegations were true. (Tapes 8, 18, and 19 of Trial.) The three expert witnesses related what the children told them for purposes of medical diagnosis or treatment. They testified that the behavior and physical conditions of A.C. and M.C. were consistent with sexual abuse. (Tapes 17-20 and 25-26 of Trial.) At the conclusion of her testimony, the forensic nurse examiner stated her conclusion of an "overall likelihood of probable abuse." (Tape 26 of Trial.) Viewed in context, none of this testimony is constitutionally problematic. *See Parker*, 394 F.3d at 1310-13.

The child forensic interviewer testified generally about the techniques she uses in interviewing children and about the characteristics that sexually abused children typically exhibit during interviews. (Tape 13 of Trial.) This testimony was permissible. *See United States v. Waters*, 194 F.3d 926, 929-31 (8th Cir. 1999). The interviewer also commented on A.C.'s responses during the safe-house interview that she conducted with him. (Tapes 13 and 14 of Trial.) Defense counsel thoroughly cross-examined the interviewer regarding the techniques she used with A.C., noting potential problems with those techniques. (Tape 14 of Trial.) Furthermore, the jury heard from the defense expert, who criticized the investigation of this case and pointed out inconsistencies in the victims' statements. (Tapes 27-29 of Trial.) Viewing all of the purportedly bolstering testimony in the context of the trial as a whole, the testimony did not render Alvey's trial fundamentally unfair.

### DENIAL OF FAIR TRIAL

In his twenty-seventh ground, Alvey argues that he was denied a fair trial by his attorneys' actions and inactions, as well as by the numerous denials of due process by the prosecution.  Having considered the state court record and all of Alvey's other claims of error, I find this argument without merit.  *Cf. Jones v. Stotts*, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative error analysis only applies to the effects of errors, rather than non-errors).

### CONCLUSION

For the reasons stated above, I recommend that:

1) the application for a writ of habeas corpus (Doc. 1) be denied;

2) the motion to dismiss (Doc. 17) be granted;

3) the motion for an evidentiary hearing (Doc. 29) be denied; and

4) this cause be dismissed with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

---

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE